I hope to reserve two minutes for rebuttal, and I'll watch my time. This appeal concerns the denial of two motions to dismiss, and unless the Court prefers otherwise, I'll briefly address the 1326D motion before turning to the statute of limitations motion with any remaining time that I have. Ms. Robles' 1326D motion should have been granted because she met all three required prongs of the statute, exhaustion of available administrative remedies, deprivation of judicial review, and fundamentally unfair removal proceedings. Are we clear about who had the burden of proof on each of those? Yes, Your Honor, Ms. Robles-Velasco had the burden on each of the prongs. And because the last prong will likely be decided in the argued and still pending Reed and Soto cases from earlier this year, I'd like to focus on why the Court correctly found that the other two prongs were satisfied. The Court didn't clearly err in finding that the government didn't meet its clear and convincing burden of showing a considered and intelligent waiver of Ms. Robles' rights. The immigration proceedings at issue entailed a single appearance over a one-week period without counsel, an adequate interpreter, or any record of the proceedings beyond an inaudible recording. Without record of an oral... Can I just ask you, I've never seen an inaudible recording, so there was a recording created and we just can't hear it? Correct, Your Honor. And there's certainly no transcript. And we don't have any indication of how long it lasted? I am not aware of how long it lasted. And so without a record of any sort of oral advisory or written waiver, there's really no evidence that Ms. Robles was told she could challenge the aggravated felony classification, as of course she does here, much less appeal any determination. So therefore, she was deprived of her administrative remedies and judicial review under this Court's Gomez, Ochoa-Orejel, and Ubaldo-Figueroa decisions. Except she had the burden. Sorry, I didn't mean to interrupt you. Except she had the burden. There's no record that she was told, but she has the burden, doesn't she, to show that she wasn't? She has the ultimate burden at D-1 and D-2 to show that she was either, she exhausted or was deprived of judicial review at D. So ultimately, she was held to that burden correctly because I think there's this sort of threshold step that the Court usually applies of looking to whether there were available remedies. And traditionally, under Ubaldo-Figueroa and its progeny, a non-citizen has been held to be exempt from exhaustion when they have no information to seek remedies. So the burden is effectively relieved if the government can't demonstrate availability or waiver. That's how this Court has sort of applied that sort of threshold step. And that's how this Court in Nunez also, very recently when it was addressing this, applied waiver principles in analyzing those two prongs. I think I cut you off. I assume that you're relying on the opaque aspect of this rule statement. And I'm curious what you think the best case is for this scenario that you're in in terms of a lack of translation because the cases that I've seen this rule applied in more commonly are different than this, right? Where there's something about the procedures themselves that are just incomprehensible. The Court or something about the proceedings like affirmatively mislead someone. And this is different than that. And it seems like there's different motivations or opportunity for the person who's being hindered to deal with the problem. In this scenario, it's just sort of like, I'm not understanding anything. Please fix this problem for me. So why should we apply this opaqueness rule the same in this context as to the other context I've outlined? Well, because I think even in this Court's recent decision in Nunez, the Court emphasized that someone who was never even made aware of their rights cannot validly even make the step of waiving them. And that is really consistent with this Court's prior 1320-16 cases. I'd say to Your Honor's question, Gomez is probably our best case in that regard, which involved just sort of a bare reliance on a signed appeal waiver, just sort of a mark like we have in this case that the appeal was waived on a piece of paper without any record of those stipulated removal proceedings or access to counsel or an interpreter. So why in this scenario isn't it on the petitioner to alert the Immigration Court? I'm not understanding anything. I don't know what's happening. Because due process is ultimately what animated and what spawned 1320-6d. And this Court, and so... It's just, counsel, here's what I'm trying to get at. I don't mean to interrupt you, but... Well, I guess I did. I just don't think we're... I think we're talking past each other. It's why I asked how long the hearing lasted. Because it's the flip-flop to follow up on what Judge Forrest has... What we usually see is that there's a petitioner who has an unusual dialect, right? But she's actually alleging that the interpreter the government used had an atypical dialect. And this is a person who had lived in the United States for, like, 20 years or something. Right. Whose language was working just fine in the United States for her, apparently for 20 years. And so it is hard for me to imagine that this hearing went on for whatever length of time without her raising her hand and saying, I'm not understanding what's going on here. Right. But that is what you're asking me to assume happened. Well, there's no evidence in the record contradicting Ms. Rubel's assertion. Certainly the government could have found that interpreter, for instance, and submitted a declaration saying, okay, this is what happened in these proceedings. I appreciate that. But just walk me through how it is not... How do we apply what you agreed at the top of the hour? Is your client's burden here? Right. So I think she met her burden here when she proffered through her declaration that she was unable to understand anything that happened at the proceedings. Okay. So you're relying on her declaration. Absolutely. Yes. That's the primary piece of evidence here that was unrefuted. And what does her declaration say about her understanding or not understanding that she had the right to appeal? Her declaration says that she had no understanding of the proceedings as a whole. I can pull it up. I believe it's at ER 178. She said, I could not understand the interpretation because the dialect and accent of the interpreter was different from the dialect that I'm familiar with. She doesn't say in that declaration that she informed the immigration court or that she made an effort to do that. She doesn't because she didn't because it was, again, a very fast proceeding. She had no concept of the significance of the proceedings. I mean, this was just done over a week, right, between Christmas and New Year's. You know, she had lived in this country for a long period of time and she's lived here for most of her life. And I think really what animates this requirement is if you're going to take the serious and life-altering step of deporting someone who's an LPR, like Ms. Robles-Velasco, you need to keep records, ultimately, of those proceedings. And here, I think, ultimately, you know, once Ms. Robles put this at issue, that she didn't understand these proceedings, it is incumbent upon the government to actually produce something in response to comport with the due process principles that animate. Counsel, with respect, I think my colleague, Judge Kristen, has raised the concern that I have. Your client has the burden. She'd been in the country for 20 years. For her to say, I don't understand any of this, I don't understand what's being translated, and yet she's been able to live successfully in the United States for 20 years, that's kind of hard to swallow when she has the burden of proof. What am I missing here? I mean, we, as you know, this is a tough area of law. These are human beings who have tough questions. We respect that. But there's common sense involved here too. And that's what I find missing in this. I don't see how your client meets her burden. Help me with that, please. So I think, respectfully, Your Honor, I think what she proffered meets her burden. And I think the rule that I'm hearing the court proposing, which is allowing a completely silent record where the defendant is saying that she didn't understand anything, to suffice, that basically shifts the burden to the defense to provide evidence of an affirmative misrepresentation. And I think they're really ill-qualified to do so in this particular context. So I think it's a really, really troublesome rule. And I think it gets it, you know, when we're looking at, you know, if we're applying the Ross factors, as Nunez did here, you know, it's clear that the rule exists, these three factors for, to sort of exempt a situation where the process is just so opaque that the non-citizen in this case cannot use it and cannot understand it. And I think that is the record that we have here. And unless the court has any further questions, I'm hoping to get to my statute of limitations point, but I will reserve any remaining time. So the court has questions about that. I don't think we do at this point. Thank you. Good morning, and may it please the court, Rajesh Srinivasan for the United States. This court can affirm without waiting for the outcomes in Reed and Soto, because the statute of limitations argument of the defendant fails even under a constructive knowledge theory, and the defendant failed to exhaust her administrative remedies. Unless the court wants me to start elsewhere, I'll begin where my colleague started, on the exhaustion of remedies. This case is on all fours with Nunez. In the defendant's opening brief, they argued that an unknowing and unintelligent waiver of appeal excused their compliance with subsection D-1. That is the exact same argument that Nunez presented, saying that- It's not the same fact pattern. And so it's peculiar for the reasons that Judge Forrest has explained. We're told that there was a record kept, but it's unintelligible. I looked hard to try, and my clerk looked hard to try to figure out how long this proceeding was, because I was trying to envision how it would be that a person who didn't understand wouldn't have done something to call that to the attention of the IJ. But without knowing even how long the hearing is, it's very tough, and it's hard to imagine crafting a rule statement that couldn't wind up being applied to work real mischief in another case, because we take these translation issues very, very seriously. So my question for the government is, why didn't we get something from the government telling us about whether or not the interpreter here did or did not have this particular dialect? I can't speak to the district court proceedings, unfortunately. I'd be happy to submit a letter if the court needs more information on that. But regardless, as you pointed out, the burden is on the defendant to show satisfaction of subsection D1. And the burden doesn't shift merely because she says in a declaration that she could not understand what the interpreter was saying. But doesn't Gomez say that the government has some burden to develop the record as well? And how, I mean, in this kind of a context, what's the petitioner going to do to present to the court what happened at the hearing when there was no record? And that's the immigration court, the government's role to create that record of the hearing. I understand the court's concern. But just as there are no perfect trials, there are no perfect immigration hearings. So I guess this case requires us to answer the question of who gets to bear the burden of that problem. And I think the burden is clearly on the defendant, because it is their burden to show that they've satisfied all available remedies. But what about the second prong? The second prong of the new yes. Of the test. Of the test. I think that's a better argument for the defense, in that they have alleged that she did not understand anything that was happening in the proceeding, which would shift the burden to us to prove by clear and convincing evidence that any waiver was knowing and voluntary. To be clear, I think we have met that burden here, because the available evidence is that she received a translation in Spanish, informing her that she would have this hearing, that there would be procedures, and then the order itself says that the defendant waived her right to appeal. Given this evidence, and given that the defendant did not specifically say she didn't understand she had a right to appeal, I think D2 is also not satisfied. But our better argument is on D1. I think the distinction, going back to your point, Judge Christin, between Nunez and this case, is one of being told a little bit about the appellate process and having an unknowing, unintelligent waiver, versus what the defendant is alleging, which is pure silence. But even if we take that view of it, rather than the framing that the defendant presented in their opening brief of this being a waiver issue, we still can't meet the Ross framework. Because the mere silence of not informing the defendant of all their rights does not constitute a dead end, nor does it constitute procedures that are so opaque or incapable of use that no ordinary immigrant could take advantage of them. And there's no evidence that the government thwarted the defendant's attempt to seek administrative relief. So let me give you the statement in Gomez that I'm just trying to figure out how I square with the argument that you're making. It says, we have said unmistakably that the government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings. What do I do with that? So I think there are two points. On D2, I would agree that is a relevant issue for us. On D1, it is not. Because Nunez said that even if there were an unintelligent, unknowing waiver of appellate rights, that is still not enough to satisfy D1. So the defendant is in a situation where under either interpretation, she cannot prevail. Either she's arguing that it's an invalid waiver of her appellate rights, which Nunez tells us is not enough to excuse D1. Or she's saying that she didn't understand anything, the issue is not a waiver, but the explanation of procedures. In which case, she hasn't met her burden of proving any of the three buckets laid out by Ross and the Nunez court. And to go back to a point that you made in my colleague's argument, Judge Flores, I don't think that the issue here is opaqueness. Because the first two categories of Ross are really about the process itself, not about the individual experience that the defendant had. So in order for the defendant to fit under the opaque bucket, she would need to show that the procedures as a whole, the immigration procedures as a whole, were so opaque that no ordinary immigrant could take advantage of them. And she cannot show that by the mere fact that we know that thousands of immigrants take advantage of this system every day. So let's play that out a little bit. I mean, I think that that's a valid argument for you to make, for sure. But let's play it out a little bit. And assume for the purposes of this question that the petitioner has actually shown that they just didn't understand what was going on through a translation problem, right? They've made that showing. I know you don't think they've made that showing here, but assume that they have. Then under this analysis, what would we do about that? Is it the government's position that that's just not a scenario that's going to trigger relief here? Or how would you walk that through the analysis? So I think if all we had were the fact that she didn't understand anything, that would not be enough. But say hypothetically... Under D-1, just not enough, period. Period. Because there was nothing that the government did to thwart the defendant. Except for, I mean, if it's true that the government was, you know, the court system provides translation services, that's a due process issue, right? And if the translation services that were provided were not effective, useful, doing their job, then doesn't the government have a role there? I think the government would have a role if the defendant said something like, I can't understand the interpreter. Yeah, I mean, that's a rub here, for sure. And if at that point the judge said, I don't care, this is the interpreter we have, you don't understand anything, whatever, I think it gets closer to machination, misrepresentation, that category. But that is not the evidence in the record that we have before this court. So unless the defendant can show that the government did something, like what happened in Valdivia-Soto, to either mislead her or to prevent her from taking advantage of her remedies, the defendant cannot prevail under Ross. And it is her burden to do so. Do you want to address the statute of limitations? I would like to briefly address that as well, thank you. Under Zamudio, the presentation of a green card at the border is not enough to trigger the government's knowledge, even under a constructive knowledge theory. So Zamudio removes that bucket from the defendant's argument. So what we're left with are two different instances that she says should have alerted authorities to her illegal presence. Her updating files with the DMV in 2012, and her updating information with the Mexican consulate. Not only has the defendant made arguments about databases that are indisputably not in federal control, there's another issue with the argument, which is that even in circuits that have adopted a constructive knowledge framework, there's a two-step framework. The first framework is the government needs to know of the alien's presence in the country. And then the reasonable diligence framework comes on the second prong, which is the government needs to exercise reasonable diligence to show that they could have learned about the alien's status. Those two instances, the 2012 DMV update and Mexican consulate update, do not do anything to show immigration authorities her presence. I tend to agree with you. Could I just, since your time is running out, ask you to address an issue that I can't find where the district court addressed the last argument that she raised, the 2012 payment of court fees. I do not have it off the top of my head where... Your understanding is that the district court addressed all of her statute of limitations arguments? That is my understanding. I've reviewed the record and I have the same concern that Judge Christin has raised. I don't see how the district court has addressed the payment of court fees. I don't see that in the record. Even if the district court didn't address that under a harmless error analysis, that would not have been enough. I don't think the government has argued harmless error until just now. So why wouldn't that be forfeited? The court has discretion to apply harmless error, but I think because the argument was before the court, she considered it, and a court does not need to exhaustively explain every basis for denying a claim. Thank you for your argument, counsel. We'll hear from opposing counsel. Could you please put a minute on the clock? Thank you, Your Honor. Just to start where my colleague left off, the court did not address the payment of court fees issue in its written decision. That your statute of limitations argument? On the statute of limitations argument, nor did it, I think, address several defects in the deportation officer's declaration, which I think, you know, as we've emphasized warrant dismissal. What's your strongest prong two argument for the statute? It feels like your prong one and prong two arguments are indistinguishable. I'm talking about the statute, D1 and D2. Oh, sorry. Yes. Returning to 1326D. Yes. How is your D2 argument different from your D1 argument? Is it? It's not, except for the fact that I think in addition to the waiver that we've shown under D2, we've also shown under Ross that this process that was in place was so opaque as to be incapable of use. And regarding... Why isn't the government correct that that is really getting at the process itself and not maybe an individualized experience? I think that's a valid argument. So if I'm understanding your Honor's question correctly, I think it does speak to the process and I think the waiver is part of that process. And when you're looking at opaque, the question of opaqueness, the Supreme Court and Ross discussed this hide and seek approach that was in an 11th Circuit case. And I think that's exactly what happened here. I mean, the context that we see this more often is usually like in the prison context where you've got like some sort of administrative grievance exhaustion about, you know, whatever conditions problem that the inmate has and you just can't even figure out this maze of things that are supposed to happen. So it's not so much about active thwarting in the sense that it's made the process so complicated but what this hide and seek approach that's discussed in Ross, I think, really gets at is just basically an unknowable or a process that may be there, out there somewhere in the ether, but that the prisoner or the non-citizen in this case just can't find. And it doesn't necessarily require active thwarting as my colleague has suggested. It's just access to information. And this Court's recent decision in Eaton as well as its en banc decision in Albino go to that point in the PLRA context. And that's exactly what happened here. Ms. Robles might have said, for instance, that she didn't understand the process during the proceedings but we have no record ultimately of that. And I think given the stakes here, ultimately, the Court has to at least hold the government to some burden in this case of producing some sort of record of the proceedings. Thank you for your argument, counsel. Let me just make sure. Judge Smith, do you have any other questions? I do not. Okay. And Judge Forrest? All right. Thank you both for your arguments. We'll take the case under advisement and go on to the next case on the calendar.
judges: SMITH, CHRISTEN, FORREST